# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:11cv6

| | |
|---|---|
| C. STEVEN YATES, | ) |
| Plaintiff, | ) |
| Vs. | ) MEMORANDUM |
| | ) OF DECISION |
| MEDICAL SPECIALTIES, INC., | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on defendant's Motion to Consolidate (#9). Having considered defendant's motion and reviewed the pleadings, the court enters the following findings, conclusions, and Order denying the Motion to Consolidate.

## FINDINGS AND CONCLUSIONS

**I.    Nature of the Action**

This action concerns, as does Medical Specialties, Inc. v. Yates, 3:11cv7 (W.D.N.C. 2011), whether Medical Specialities, Inc. (hereinafter "MSI") is in breach of a settlement agreement it reached with C. Steven Yates (hereinafter "Yates") in 1996 concerning what Yates (and apparently the settlement agreement) call "development fees" and MSI calls "royalties" based on MSI's sales of "ankle stabilizing orthotic" (hereinafter "ASO") appliances. (The court will simply refer to such payments as "fees" for the sake of convenience.)

At issue in this action is MSI's purported refusal since April 2010 to make payments to plaintiff of 37.5 cents per "covered device" sold by MSI. According to Yates, the term "covered devices" includes devices specified in the 1996 settlement agreement and, as specified in the agreement, any other device MSI thereinafter added to its product line that

-1-

fell within the scope of utility Patent No. 5,067,486 (hereinafter " the '486 patent").

Some history is necessary to provide context. It appears undisputed that despite earning fees from the sales of such devices, Yates is not the inventor of the technology behind such devices. MSI appears to own the technology. Instead, it appears that Yates is the former head athletic trainer at Wake Forest University, who is experienced in taping ankles and has specialized knowledge of the anatomical purposes achievable through proper taping. In 1989, a former officer of MSI contacted Yates and secured his assistance in the development, evaluation, commercialization, and promotion of the ASO appliance. MSI apparently agreed to pay Yates a percentage of net sales of all ASO devices in exchange for his assistance for the "product life cycle."

This relationship appears to have been going well up until 1994, and it is undisputed that MSI paid Yates all fees up to that point. In 1995, however, things changed. According to Yates's Complaint, in 1995 MSI developed and marketed a retail version of the ASO at his suggestion. Rather than compensate Yates for the professional and retail versions of the ASO, MSI apparently refused to compensate Yates for *either* version. Yates filed suit against MSI in the North Carolina General Court of Justice, <u>Yates v. Medical Specialties, Inc.</u>, 95 CVS 2773 (Forsyth Co. Sup. Ct. 1995), leading, ultimately, to the settlement agreement now at issue in this matter and in the companion case.

In the years following the settlement agreement, MSI apparently continued to enjoy robust sales of its ASO devices and even expanded the product line of ASO devices to include four additional devices. Yates claims that these devices also "used the '486 patent" as contemplated by the 1996 settlement agreement.

In 2010, MSI was issued an additional patent for an improvement to the invention claimed by the '486 patent, denominated *Ankle Stabilizing Apparatus Having A Pivotable*

*Stiffening Unit*. On or about the date that patent issued, Yates claims that MSI began manufacturing and marketing an embodiment of the invention claimed by the new patent as the "ASO Flex-Hinge." At about the same time, MSI stopped paying his fees despite continuing to sell at least six covered devices, according to Yates.

As he did in 1995, Yates filed suit in 2010 in the North Carolina General Court of Justice, Yates v. Medical Specialties, Inc., 10CVS 24536 (Mecklenburg Co. Sup. Ct. 2010), this time seeking to recover for breach of the 1996 settlement agreement. After Yates sought and received assignment of such action to the North Carolina Business Court by Order of Honorable Sarah Parker, Chief Justice of the North Carolina Supreme Court, MSI removed this action to this court in accordance with 28, United States Code, Section 1338(a).

As is clear from the removal papers filed with this court, the removal was based on MSI's belief that at least one of Yates's state law breach of contract claims relate to the '486 patent. Within minutes of removing Yates's state-court action to this court, MSI filed a mirror-image declaratory judgment action under 28, United States Code, Section 2201(a), Medical Specialties, Inc. v. Yates, 3:11cv7 (W.D.N.C). A motion to dismiss is pending in that action and will be resolved by Order entered simultaneously herewith.

**II.    Discussion**

    **A.    Motion to Consolidate**

In this action, MSI has moved to consolidate this action with its later filed declaratory relief action, as provided by Rule 42(a), Federal Rules of Civil Procedure, which provides, as follows:

> If actions before the court involve a common question of law or fact, the court may:
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

Fed.R.Civ.P. 42(a). In addition to the usual arguments that would favor consolidation, MSI argues that

> Consolidating the actions will further promote judicial economy and efficiency by providing diversity jurisdiction, as well as jurisdiction under 28 U.S.C. § 1338, such that any judgment entered by this Court could not subsequently be challenged for lack of subject matter jurisdiction.

Memorandum in Support (#10), at p. 1. This argument has given the court pause. First, it raises the specter that this court lacks subject-matter jurisdiction. Second, such argument gives the court reason to believe that MSI brought the companion action with mirror-image claims for purposes of shoring up what it perceives as a defective jurisdictional foundation in this Section 1338(a).

As a matter of law, subject-matter jurisdiction either exists or does not exist at the moment an action is filed. Vlachos v. M/V Proso, 637 F.Supp. 1354, 1358 (D.Md. 1986)("The existence of subject matter jurisdiction is determined by reference to the facts at the time the complaint was filed.") Parties can neither waive the jurisdictional issue nor attempt to build jurisdiction where none is found. As a matter of sound court administration, the court is compelled to explore whether it has subject-matter jurisdiction *before* it determines whether to consolidate this action or dismiss the later-filed Section 2201 matter.

### B. Subject-Matter Jurisdiction

Before deciding any other matter, the court must first consider its subject matter jurisdiction *sua sponte* as no party has directly raised the issue. Title 28, United States Code, Section 1447 directs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884).

Clearly, MSI does not wish to question the subject-matter jurisdiction as it is the party that invoked it. Likewise, Yates has no incentive to raise the issue at this time as Section 1447 provides, as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804).

In this case, the court raises the issue *sua sponte* as the ability of the court to independently address subject-matter jurisdiction is important to finality Id. The Federal Rules of Civil Procedure anticipate this issue (in the context of dismissal under Rule 12) and provide that "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). When a court considers its subject-matter jurisdiction, the burden of proof is on the party who has invoked the court's jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

To a certain extent, MSI premised removal of this action on Yates's invocation of patent law in his "Notice of Designation" filed with the North Carolina Supreme Court. Yates represented to Chief Justice Sarah Parker that:

> the interpretation and application of the terms of the contract will require consideration of certain aspects of federal patent law including, but not limited to, determining whether particular devices manufactured and sold by Defendant are within the scope of the claims of U.S. Patent No. 5,067,486.

Notice of Designation, at p. 1. Such representation was, however, made outside the confines of the well-pleaded Complaint.

After Chief Justice Parker assigned this matter to the North Carolina Business Court, MSI removed the action under Section 1338(a), which provides in relevant part as follows:

> [t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

28 U.S.C. 1338(a). MSI asserted that it removed the action because Yates's right to relief "'necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'" U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (citation omitted).

MSI's concern over subject-matter jurisdiction in this action stems from a statement made by Yates in the Certificate of Initial Attorneys Conference (hereinafter "CIAC") to the effect that:

> *Plaintiff contends that this is a state law action that does not "arise under" the*

> *patent laws of the United States.* Although the interpretation and application of the terms of the contract may require consideration of certain limited aspects of federal patent law including, but not limited to, determining whether particular devices manufactured and sold by Defendant are within the scope of the claims of U.S. Patent No. 5,067,486, Plaintiff does not believe that a "Markman"-like claim construction process will be necessary at this time because a) Defendant has conceded, or is otherwise estopped to deny, that most of the products at issue are within the scope of the '486 patent and, b) it is quite possible that there will not be any dispute between the parties as to the meaning of any of the terms of the '486 patent following the use of traditional discovery techniques.

3:11cv6, "CIAC" (#6), at p. 2 (emphasis added).

Review of the well-pleaded Complaint in this action reveals that the '486 patent is mentioned in the factual allegations, with such references incorporated into each substantive state law claim for breach of contract. MSI states in its Notice of Removal, as follows:

> Plaintiff's state law breach of contract claims have necessary patent law components in that patent law is a necessary element of at least one of the well-pleaded claims. The elements of breach of contract are (1) the existence of a valid contract and (2) breach of the terms of the contract. Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). In order to prevail on Plaintiff's claims that Medical Specialties breached the parties' Agreement based upon sales of certain alleged "Covered Devices," Plaintiff must establish that certain of the devices in question were in fact covered by the '486 patent. Specifically, Plaintiff must establish that alleged "Covered Devices," such as the ASO EVO set forth in Plaintiff's second claim for relief, infringe the '486 patent. As Plaintiff's Notice of Designation states: "the interpretation and application of the terms of the contract will require consideration of certain aspects of federal patent law including, but not limited to, determining whether particular devices manufactured and sold by Defendant are within the scope of the claims of U.S. Patent No. 5,067,486."

Notice of Removal (#1), at ¶ 10 (internal citation omitted).

Key to subject-matter jurisdiction is whether either claim "arises under" patent law as required by Section 1338. In Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826 (2002), the Supreme Court attributed to the words "arising under" in Section 1338(a) the same meaning those words have in Section 1331. Id., at 829-30. In Vaden v. Discover Bank, __ U.S. __, 129 S.Ct. 1262 (2009), the Court held in construing the

"arising under" language of Section 1331:

> [u]nder the longstanding well-pleaded complaint rule, however, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

Id., 129 S.Ct. at 1272. Perhaps most instructive here is Taylor v. Anderson, 234 U.S. 74, 75-76 (1914), which held that:

> whether a case is one arising under [federal law] ... must be determined from what necessarily appears in the plaintiff's statement of his own claim ..., unaided by anything alleged in anticipation o[r] avoidance of defenses which it is thought the defendant may interpose.

Id., at 75-76 (cited favorably in Vaden v. Discover Bank, 129 S.Ct. at 1276). MSI has put a great deal of reliance on the Notice of Designation. While such document could certainly be a judicial admission, the court does not believe it can properly be considered in light of Vaden,, Holmes, and Taylor, as the notice of designation is well outside the well-pleaded complaint. The court will not further consider the Notice.

Review of the Complaint reveals that the '486 patent is mentioned at paragraphs 9, 10, 12, 13, 17, 18, 22, & 23.[1] Perhaps most pertinent to this inquiry, Yates alleges in his Complaint that the 1996 settlement agreement modified terms of their 1989 agreement by:

> clearly defining which devices Plaintiff was to receive developmental fees upon then, or in the future, by specifically identifying those products in Defendant's line as of February 6, 1996 ... and by further specifying that *Defendant would pay development fees on any other embodiment of the invention that used the '486 patent that it thereafter added to its product line....*

Complaint(#1-1), ¶ 12(a) (emphasis added). Yates goes on to allege that other devices manufactured by MSI are embodiments of the invention that used the '486 patent.

Clearly, there is no colorable argument that patent law creates either of the common

---

[1] The subsequently issued patent, '472, is also mentioned.

law causes of action for breach of contract asserted by Yates as both claims are derived from the North Carolina common law. The question becomes whether patent law may be a necessary element of the breach of contract claims. In Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988), the Supreme Court held that:

> [Section] 1338(a) jurisdiction ... extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

Id., at 808-09. In Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318 (1998), *overruled en banc on other grounds*, Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358-59 (Fed.Cir.1999), the Federal Circuit found that in asserting a state-law claim for injurious falsehood, plaintiff alleged defendant patentee had claimed to hold exclusive rights in patents with "willful and wanton disregard" for the fact that the patent claims were invalid and unenforceable. Id., at 1322. The Federal Circuit held that because proof of a false statement was a necessary element of the state-law tort and because truth or falsity of such statement turned on the resolution of a patent issue, the claim arose under the patent laws. Id., at 1329. In Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc., 986 F.2d 476 (Fed.Cir.1993), the Federal Circuit held that a state-law claim for disparagement arose under the patent laws where the alleged false statement was the defendant's claim that the plaintiff infringed its patent. Id., at 478. In a later discussion of those decisions, the Federal Circuit held that "[i]n *Hunter Douglas* and *Additive Controls*, state tort law created the cause of action, but the pleadings at issue required patent-law questions to be resolved." Biotechnology Industry Organization v. District of Columbia, 496 F.3d 1362, 1368 (Fed. Cir. 2007).

Thus, the question is whether the well-pleaded complaint requires patent law

–9–

questions to be resolved in resolving state law causes of action. In this case, the causes of action for breach of contract are clearly created by state common law. In North Carolina, the essential elements of a cause of action for breach of contract are, as follows:

(1) a legal obligation of defendant to the plaintiff;

(2) a violation or breach of that right or duty; and

(3) a consequential injury or damage to the plaintiff.

Investment Properties v. Norburn, 281 N.C. 191 (1972); see also Poor v. Hill, 138 N.C. App. 19, 26 (2000). Resolution of whether MSI had a legal obligation to pay Yates fees under the contract for devices developed after 1996 clearly turns on the resolution of a patent issue, to wit, whether the later developed devices are within the scope of claims embodied in the '486 patent, as made clear in paragraph 12(a) of the Complaint. While the court agrees with Yates that such issue may well not require a full-on *Markman* hearing, and could even be resolved through discovery, MSI properly removed this action as state tort law creates the causes of action, but the well-pleaded Complaint requires patent-law questions to be resolved. Biotechnology Industry Organization v. District of Columbia, supra.

### C. Conclusion

Having first found that subject-matter jurisdiction exists, the court returns to MSI's argument that this matter should be consolidated under Rule 42(a). While the court agrees that this action and the companion action involve common issues of law and fact and are, indeed, mirror-image actions, consolidation is not an appropriate remedy. MSI's argument that "[c]onsolidating the actions will further promote judicial economy and efficiency by providing . . . jurisdiction under 28 U.S.C. § 1338" is without legal force as this court either had jurisdiction or didn't have jurisdiction at the moment this action was removed. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-90 (1938). MSI's Motion to

Consolidate will be denied. For the reasons briefly discussed in the companion case, the motion to dismiss therein filed will be granted and the companion action terminated as all claims in that action must be made as compulsory counterclaims in this action.

**ORDER**

**IT IS, THEREFORE, ORDERED** that MSI's Motion to Consolidate (#7) is **DENIED.**

Signed: June 6, 2011

Max O. Cogburn Jr.
United States District Judge